Donaldson v. Means.

---

## *SEPTEMBER TERM, 1791.                    [*109

---

## DONALDSON v. MEANS.

### Waiver of protest.

If an indorsee of a bill, which has been protested, promises to pay it (although the protest has not been transmitted to him), he is bound by such promise; unless, at the time of making it, some material fact was unknown to him.

THIS was an action brought by the indorsee of three bills of exchange, against the indorser. On the trial, it appeared, that the bills were drawn in April 1776, at thirty days' sight, by Nathaniel Newton, on Wilt & Hobson, of London, in favor of T. Armstrong, and indorsed, successively, by Armstrong, and by Means, the defendant; that the bills were presented, and

---

Donaldson v. Means.

noted for non-acceptance, on the 24th of March 1777 ; and that they were presented, and protested for non-payment, on the 26th of April 1777.

The question to be decided, was, whether due notice had been given to the defendant of the protest of the bills ; or he had done any act, which amounted to a waiver of notice ?

On this point, a letter was produced from the plaintiff to his father, dated the 10th of May 1778, advising of the protest, and inquiring where Means resided. It was proved, that the father showed this letter to Means, as soon as possible after it was received, and Means repeatedly promised to remit the amount of the bills ; but the protest was not exhibited to him, and never asked for ; nor was any application made to the drawer, or to the first indorser, for payment. Another letter was produced, dated the 12th of August 1779, written by the defendant, at Philadelphia, to the plaintiff, at St. Eustatius, in which he mentioned, that he had received a letter of the year 1776, referring to the protested bills ; expressed a hope that they would soon be paid ; observed, that for want of a protest he had not been able to get payment from the drawer ; but promising, nevertheless, to pay the amount to the plaintiff, whenever it was in his power to make a remittance.

For the *plaintiff*, it was contended : 1st. That during the war, when continental money was a tender, the holder of a bill of exchange *should not be required to pursue that strict punctuality, which might properly be exacted from him in a time of peace, and when his debt was not liable to be discharged in a depreciated paper currency. (1 Dall. 271.) That notice being in fact received of the dishonored state of the bills, it was not necessary in law to produce the bills and the protests ; and that since the letter of August 1779, the plaintiff relied upon the defendant's new promises of payment. 2d. That even if a protest ought to have been transmitted, yet, as the defendant, with a full knowledge of all the circumstances, has made a new assumption, it is too late for him to take advantage of the omission in that respect. For although want of notice may be considered originally, as tantamount to payment ; there are many cases in which the rule does not apply or is dispensed with. As where the drawer of a bil has no assets in the hands of the drawee ; or where the drawer himself waives the right and benefit of notice. (1 T. R. 408–9 ; Bull. N. P. 272, 276 ; 2 T. R. 713.) And in the latter case, if he knows the fact, though he is ignorant of the law, he shall be bound by his waiver. (Doct. and Stud. 303.)

For the *defendant.*—Independently of the special promise alleged by the plaintiff, the defendant cannot be charged on the bills of exchange ; for a protest is essential to enable any of the parties to recover against the others ; and it must be exhibited. The law, in this respect, is founded on good sense. By exhibiting the protest, the holder of the bill shows that he looks to the person whom he addresses for payment ; and by delivering the protest, upon receiving satisfaction himself, he enables that person to pursue his remedy against those who are ultimately responsible. But, 1st. There is nothing in the letter of August 1779, which can be regarded as an express, unqualified promise. The whole letter must be taken together. It complains of a want of the protest ; and its general spirit is no more than a declaration, that " although the protest ought to have been sent, as it is presumed to have

been received, yet the holder shall not be permitted to suffer." 2d. Even regarding it, however, as a promise, it is not legally binding, if it was made under a mistake. (5 Burr. 2670; 2 T. R. 648; Cowp. 287; 1 P. Wms. 357; 2 Chan. Cas. 154.)

By the Court.—The law upon the subject is so clear, that the whole case resolves itself into the question of fact, on which the law is to arise. If the proof is satisfactory, that the defendant, under a knowledge of all the circumstances, absolutely promised to pay, he is, incontestably, bound by his promise.[1] But if his engagement was of a conditional nature, that he would pay, when the protest was transmitted : or if any material fact was unknown to him, at the time of making the promise, the verdict should certainly be in his favor.[2]

Verdict for the plaintiff.

*Coxe*, for the plaintiff.    *E. Tilghman*, for the defendant.

---

[1] Duryee v. Dennison, 5 Johns. 248 ; Trimble v. Thorne, 16 Id. 152 ; Meyer v. Hibsher, 47 N. Y. 265. A subsequent promise to pay, by an indorsee, dispenses with proof of presentment and notice, and casts on the defendant the burden of proving that it was made, without knowledge that he was discharged by the plaintiff's *laches.* Loose v. Loose, 36 Penn. St. 538. If made with full knowledge, it is a waiver of notice. Miller v. Hackley, 5 Johns. 375 ; De Wolf v. Murray, 2 Sandf. 166. Or, presumptive proof of demand and notice. Tebbetts v. Dowd, 23 Wend. 379. But the promise to pay must be explicit ; it must refer to the particular bill ; and be made out by clear and unequivocal evidence. Miller v. Hackley, *ut supra.* And whether it was made with full knowledge that he was discharged by want of presentment, is a question of fact upon the

evidence. Moyer's Appeal, 87 Penn. St. 129. And a promise to pay, with full knowledge of the omission to make presentment, may be inferred from circumstances. Jameson v. Wolverton, 22 Leg. Int. 293.

[2] Martin v. Winslow, 2 Mason 241 ; Thornton v. Stoddert, 1 Cr. C. C. 534 ; Good v. Sprigg, 2 Id. 172 ; Gassaway v. Jones, Id. 334 ; Cram v. Colwell, 8 Johns. 384 ; Griffin v. Goff, 12 Id. 423 ; Sice v. Cunningham, 1 Cow. 397 ; Gawtrey v. Doane, 51 N. Y. 84 ; s. c. 48 Barb. 148.

